# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

WILLIE LAMAR HARTWELL,

    Petitioner,

vs.

D. W. NEVEN, et al.,

    Respondents.

Case No. 2:07-CV-01371-KJD-(LRL)

**AMENDED ORDER**

    Before the court are the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#18), respondents' answer (#22), and petitioner's reply. The court finds that petitioner is not entitled to relief, and the court denies the amended petition (#18).

    This action arose out of two judgments of conviction in the Eighth Judicial District Court of the State of Nevada. In case no. C181309, petitioner agreed to plead guilty to two counts of burglary while in possession of a firearm, one count of conspiracy to commit robbery, and two counts of robbery with the use of a deadly weapon. Petitioner agreed to be treated as a habitual criminal, and the prosecution agreed not to ask the court to sentence petitioner to life imprisonment without the possibility of parole. Ex. 6 (#10-2, p. 37).[1] The court imposed five concurrent sentences with maximum terms of twenty-five years and minimum terms of ten years. Ex. 10 (#10-

---

[1] Page numbers in parentheses refer to the images of the documents in the court's computer docket.

2, p. 97). In case no. C183357, petitioner agreed to plead guilty to one count of burglary while in possession of a firearm and one count of robbery with the use of a deadly weapon. Petitioner agreed to be treated as a habitual criminal, and the prosecution agreed not to ask the court to sentence petitioner to life imprisonment without the possibility of parole. Supp. Ex. 5 (#22-9). The court imposed two concurrent sentences with maximum terms of twenty-five years and minimum terms of ten years; the sentences in case no. C183357 run consecutive to the sentences in case no. C181309. Supp. Ex. 9 (#22-15). Petitioner did not directly appeal the judgments of conviction.

Petitioner then filed in the state court a post-conviction habeas corpus petition that challenged both judgments of conviction. Ex. 11 (#10-2, p. 100); Supp. Ex. 10 (#22-16). The state district court denied the petition. Ex. 15 (#10-3, p. 28); Supp. Ex. 14 (#22-20). Petitioner appealed, and the Nevada Supreme Court remanded for an evidentiary hearing on whether petitioner was deprived of a direct appeal. Ex. 17 (#10-3, p. 41); Supp. Ex. 16 (#22-22). The state district court held the evidentiary hearing, and then it denied the petition. Ex. 20 (#10-3, p. 70); Supp. Ex. 20 (#22-28). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 25 (#10-3, p. 106); Supp. Ex. 25 (#22-34).

Petitioner then commenced two actions in this court, the current action and 2:07-CV-01372-RCJ-(LRL). The court determined that petitioner had not exhausted his third ground for relief in each action, and petitioner dismissed that ground. The court also consolidated the two actions into the current action. Petitioner filed his amended petition (#18), which contains the two remaining grounds for relief.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> When it comes to state-court factual findings, [the Antiterrorism and Effective Death Penalty Act] has two separate provisions. First, section 2254(d)(2) authorizes federal courts to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable. Second, section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence."
>
> We interpret these provisions sensibly, faithful to their text and consistent with the maxim that we must construe statutory language so as to avoid contradiction or redundancy. The first provision—the "unreasonable determination" clause—applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, that the process employed by the state court is defective, or that no finding was made by the state court at all. What the "unreasonable determination" clause teaches us is that, in conducting this kind of intrinsic review of a state court's processes, we must be particularly deferential to our state-court colleagues. For example, in concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal

> standards of appellate review, could not reasonably conclude that the finding is supported by the record. Similarly, before we can determine that the state-court factfinding process is defective in some material way, or perhaps non-existent, we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.

Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).

"Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the record without holding an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005). The requirements of § 2254(e)(2) apply to a Rule 7 expansion of the record, even without an evidentiary hearing. Id. "An exception to this general rule exists if a Petitioner exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings." Id.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

In ground 1, petitioner claims that counsel failed to consult with petitioner about a direct appeal, thus depriving petitioner of his right to a direct appeal. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). On this issue, the Nevada Supreme Court held:

> Hartwell argues that the district court erred in finding that his counsel did not deprive him of his direct appeal. We disagree. The record does not indicate that Hartwell ever asked his counsel to file a direct appeal. Hartwell's expression of disappointment that two of his sentences were consecutive rather than concurrent

-4-

> does not constitute such a request. Hartwell's plea agreement, which he acknowledged reading and signing, advised him of his limited rights to appeal after a guilty plea. Further, counsel testified at the evidentiary hearing that he did not see any appealable issues in the case. We therefore conclude that the district court did not err in denying this claim.

Ex. 25, pp. 1-2 (#22-34, pp. 2-3). That alone was a reasonable decision. At the evidentiary hearing, petitioner testified that he told counsel that he was dissatisfied with his sentences. Supp. Ex. 18, p. 28 (#28-2, p. 2). Counsel testified that petitioner was dissatisfied with his sentences, but that petitioner did not ask counsel to appeal, and counsel saw no issues that he could raise on an appeal from a plea of guilty. Supp. Ex. 18, pp. 15-16, 21-22 (#28-1, pp. 16-17, 22-23). The issue was credibility, the state district court determined that petitioner was more credible, and petitioner has not shown how the state district court's determination was unreasonable in light of the evidence presented. 28 U.S.C. § 2254(d)(2). In light of that determination, the Nevada Supreme Court reasonably applied Roe. 28 U.S.C. § 2254(d)(1).

        Furthermore, even if the state courts' decisions were unreasonable, Petitioner still has not shown how he suffered prejudice. At the time that petitioner's state habeas corpus petition was pending, the remedy for the deprivation of a direct appeal was for the petitioner, with the assistance of counsel, to file a habeas corpus petition in state court that raises the issues that could have been raised on direct appeal. Lozada v. State, 871 P.2d 944 (Nev. 1994). Even though the state district court determined that petitioner had not been deprived of a direct appeal, it still asked for briefs on the issue that could have been raised on direct appeal: Whether petitioner's stipulation to treatment as a habitual offender was proper. The state district court determined that that issue lacked merit. Ex. 20, p. 3 (#10-3, p. 74). Petitioner raised that issue in his appeal to the Nevada Supreme Court. Ex. 23, pp. 7-10 (#10-3, pp. 89-92). The Nevada Supreme Court determined that the issue was without merit. Ex. 25, pp. 2-3 (#10-3, pp. 108-09). The state courts did everything that they would have done had they determined that petitioner was deprived of his direct appeal, and thus petitioner suffered no prejudice from a lack of a direct appeal. Ground 1 is without merit.

1   In ground 2, petitioner claims that the stipulation to be treated as a habitual criminal
2 was improper and that it violates the due process clause of the Fourteenth Amendment. On this
3 issue, the Nevada Supreme Court held:

> Hartwell also argues that the district court erred in finding that he properly stipulated to the prior convictions giving rise to his treatment as a habitual criminal. We disagree. In Hodges v. State, we held that a defendant could receive habitual criminal treatment based on a stipulation to or waiver of proof of prior convictions, but not based on a stipulation merely to his status as a habitual offender. As in Hodges, it is clear in this case that Hartwell stipulated to or waived proof of his prior convictions, not that he only stipulated to his status as a habitual offender. Although the convictions were not listed in the plea agreement or in the attached amended information, the plea agreement stipulated to treatment as a habitual criminal and set forth the possible sentences. Before Hartwell entered his guilty plea, the parties set forth on the record the extensive history of the plea negotiations, including the State's requirement that Hartwell stipulated to habitual criminal treatment "based on his seven prior felonies." Before accepting Hartwell's guilty plea, the parties advised the district court in Hartwell's presence that the negotiation included large habitual criminal treatment. While canvassing Hartwell, the district court established that Hartwell understood the range of punishments he was facing. Before sentencing, Hartwell was served with the State's notice of intent to seek punishment as a habitual criminal, which listed six prior felonies. At sentencing, the district court noted that Hartwell disputed one of those six felonies, but there is no indication in the record that Hartwell disputed the remaining convictions. On the basis of these facts, we conclude that the district court did not err in finding that Hartwell stipulated to these five prior convictions.

16 Ex. 25, pp. 2-3 (#10-3, pp. 108-09) (citing Hodges v. State, 78 P.3d 67 (Nev. 2003)). The Supreme
17 Court of the United States has not clearly established how prior convictions must be proven to
18 support a finding of habitual criminality. See Dretke v. Haley, 541 U.S. 386, 395-96 (2004).
19 Consequently, the Nevada Supreme Court's holding cannot be contrary to, or an unreasonable
20 application of, clearly established federal law as determined by the Supreme Court of the United
21 States. Carey v. Musladin, 549 U.S. 70, 77 (2006); 28 U.S.C. § 2254(d)(1). This court cannot grant
22 relief on ground 2.
23   IT IS THEREFORE ORDERED that the amended petition for a writ of habeas
24 corpus pursuant to 28 U.S.C. § 2254 (#18) is **DENIED**. The clerk of the court shall enter judgment
25 accordingly.
26 ///
27 ///
28 ///

1  ///
2  ///
3  ///
4       IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the
5  following issues:

      1.    Whether this court was correct in its ruling that petitioner was not deprived of a direct appeal; and

      2.    Whether this court was correct in its ruling that the Nevada Supreme Court's ruling on the stipulation to receive habitual criminal treatment was not contrary to, or an unreasonable application of, clearly established federal law as defined by the Supreme Court of the United States.

DATED: June 1, 2010

_____
KENT J. DAWSON
United States District Judge